Curtis BELL, Plaintiff

v.

Abraham A. RIBICOFF, Secretary of
Health, Education and Welfare,
Defendant.

Civ. A. No. 9830.

United States District Court
N. D. Alabama, S. D.

Dec. 7, 1961.

Brobston & Brobston, Bessemer, Ala.,
for plaintiffs.

Macon L. Weaver, U. S. Atty., Huntsville, Ala., for defendant.

ALLGOOD, District Judge.

Plaintiff brings this action under Title 42 U.S.C.A. § 405(g), to review the decision of the Secretary of Health, Education and Welfare denying his application to establish a period of disability and for disability insurance benefits. The Hearing Examiner denied the relief sought, and upon being affirmed by the Appeals Council the opinion of the Hearing Examiner became the final decision of the Secretary.

Both parties have filed motions for summary judgment.

Plaintiff filed his application herein on July 20, 1959, alleging disability from January 19, 1959, due to high blood pressure, pneumoconiosis, a broken arm, and a nervous condition.

Claimant was born on January 3, 1906, and obtained a seventh grade education. His employment during his adult life was in the mines, where he had worked for approximately 21 years until 1957, at which time he was terminated due to unauthorized absences. He has since made no attempt to find employment and has not worked other than to help his nephew do some roofing which he alleges hurt his legs.

The medical evidence shows that Dr. John M. McMahon submitted a report on July 21, 1959, stating that he saw plaintiff four times, namely, on August 29, 1957, September 17, 1957, February 26, 1958 and March 17, 1958. A chest x-ray made in August, 1957 revealed linear and fine nodular fibrotic changes throughout both lung fields. An electrocardiogram was interpreted as normal and blood pressure was 190/108. The heart appeared to be vertical and there was no dyspnea (shortness of breath) or angina. Dr. McMahon indicated the presence of bilateral emphysema and that dyspnea was present only upon straining or running up hill. Vital capacity was reported as 74 per cent. The diagnosis given were essential hypertension, pneumoconiosis, pulmonary fibrosis, (abnormal formation of fibrous tissue in the lungs), and indirect inguinal hernia.

Records of Lloyd Noland Hospital showed that plaintiff was treated in 1925 for arterial hypertension and that he was again a patient from December 24, 1944 to April 16, 1945, for treatment of a fracture of the left femur (thigh bone) due to a gunshot. On January 31, 1958 he was examined in connection with a claim against his employer, alleging disability due to pneumoconiosis. He complained of shortness of breath of four or five years duration on unusual exertion, occasional headaches, and cough. He stated that he had also noticed that his blood pressure had been too high and that once in a while he had palpitation. He appeared well developed and nourished, weighing 161½ pounds. He was 5 feet 8 inches tall. Physical examination revealed blood pressure of 190/100, no murmurs, and moderate enlargement of the heart. Examination of the lungs showed nothing unusual. Timed vital capacity tests showed 82.8 per cent at 1 second, 97.5 per cent at 2 seconds, and 98 per cent at 3 seconds. The total vital capacity was 87.5 per cent of normal for his height and the maximum breathing capacity was 90 per cent of normal. Electrocardiogram was normal and laboratory tests were essentially normal. X-rays of the kidney, ureter and bladder region showed a linear streak of calcification in the right side of the pelvis just lateral to the wing of the sacrum, probably in the iliac artery. X-rays of the chest showed an increase in lung markings, with only a very early nodular reaction, and there was no evidence of a super-imposed infection or conglomeration. It was the opinion of the examining physicians that plaintiff had very early nodular pneumoconiosis as it occurred among ore miners, having been in that occupation about 21 years, and that he had 10 per cent permanent partial disability therefrom.

A report from the University of Alabama Medical Center shows plaintiff was admitted as an emergency on January 19, 1959, with history of having been hit on the left arm with a guitar. Physical examination showed blood pressure 150/100. He was treated with open reduction of the fracture of the left ulna (forearm) with intramedullary fixation and a supplementary bone graft, and he was last seen in the Clinic on August 12, 1959.

After the hearing on plaintiff's application herein, comprehensive consultative examinations of plaintiff were made by Dr. Keehn W. Berry, Jr., an internist; Dr. John M. Higginbotham, specialist in orthopedic surgery, and Dr. Henry Spira, a neuro-psychiatrist.

The three doctors conducted independent examinations of plaintiff and the objective medical findings upon which they base their conclusions are not inconsistent with those shown above in the reports of Dr. McMahon and the Lloyd Noland Hospital.

Dr. Berry stated that he agreed with plaintiff's own statement that he should not perform any occupation that might involve the safety of others, but from a physical standpoint he could not honestly detect any difficulty.

The orthopedic evaluation by Dr. Higginbotham disclosed that plaintiff was not disabled from an orthopedic standpoint, and that there was very little or no residual disability resulting from the fractures of plaintiff's arm.

The psychiatric examination by Dr. Spira revealed that plaintiff spoke in an unintelligible fashion at times and at other times spoke very logically. Dr. Spira concluded that plaintiff was probably of the paranoid type; that he was probably less impaired from a psychiatric standpoint than he was 20 years ago. Dr. Spira also stated that some of plaintiff's symptoms were probably due to hypertension, but from a psychiatric view plaintiff could certainly do light routine work.

Title 42 U.S.C.A. § 423(c) which places the burden of proof upon plaintiff to establish a disability provides:

"An individual shall not be considered to be under a disability un-

less he furnishes such proof of the existence thereof as may be required."

The requisite disability which plaintiff is required to prove is defined by Title 42 U.S.C.A. § 416(i), as meaning: " * * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or medical impairment which can be expected to result in death or [would] be of long-continued and indefinite duration."

The sole issue to be determined by this Court is whether or not the Hearing Examiner's decision that plaintiff has not met the burden of proof is supported by substantial evidence. Title 42 U.S. C.A. § 405(g).

■ The record seems without dispute, and it is conceded by plaintiff in his brief that plaintiff's alleged disabilities, if taken individually, would not be sufficient to establish the required disability. However, plaintiff contends that if these disabilities were considered together, their total effect would result in the disability contemplated by the statute. This is the correct test applicable, and the Court has considered plaintiff's disability in that manner.

As stated above, plaintiff was given comprehensive consultative examinations by three different doctors, with each doctor concentrating on different individual disabilities alleged by plaintiff in the category of the field in which he specialized. Each doctor, however, based his findings on plaintiff's individual disability with regard to the effect it might have with relation to his other disabilities. The medical evidence of record reveals only one instance where one or more of plaintiff's disabilities are related in such a way as to contribute to a disability of a greater extent than if taken alone; that is, in respect to plaintiff's disability resulting from hypertension and a nervous condition. In this regard, Dr. Spira stated that some of plaintiff's psychiatric symptoms were probably due to hypertension; however, his opinion is that plaintiff's primary disability is not a psychiatric one, and he concluded that:

"It is true, of course, that his mental deterioration and his bizarre behavior would make it difficult for him to obtain any responsible position. However, from a psychiatric point of view, he could certainly do light routine work. He is probably less impaired from a psychiatric standpoint than he was twenty years ago."

The conclusion that plaintiff could do light routine work, uncontroverted by any medical evidence, would probably support a finding that plaintiff is not suffering from a disability of the severity contemplated by the statute, at least insofar as it pertains to plaintiff's mental condition. However, additional significance should be attributed to Dr. Spira's conclusion that plaintiff is less impaired from a psychiatric standpoint than he was 20 years ago, since plaintiff worked for some 15 years with at least as serious a disability as he is suffering from at present with respect to hypertension (the evidence reveals a history of hypertension as early as 1925) and a mental condition.

This can only compel the conclusion that plaintiff is not suffering from a disabling impairment or combination of impairments, since the medical evidence is uncontroverted that his condition with regard to pneumoconiosis and his broken arm is not disabling either taken alone or in combination with all of plaintiff's other alleged disabilities.

■ From the foregoing and from the whole record, it clearly appears that plaintiff has not sustained his burden of proof and that the Hearing Examiner's decision is supported by a substantial evidence.

It is, therefore, ORDERED ADJUDGED AND DECREED, as follows:

(1) That the plaintiff's motion for summary judgment be and the same is hereby overruled; and

(2) That the defendant's motion for summary judgment be, and the same is

**504**

hereby granted, and the decision of the Secretary be and the same is hereby affirmed.